Good morning, Your Honors. Marie Kael on behalf of Petitioner. In order to determine whether the immigration judge's credibility determination is supported by substantial evidence, we must evaluate each ground cited by the immigration judge in her decision. First, in the instant matter, the immigration judge indicated that Petitioner's identity was in question and held his lack of ability to gather documents in support of his identity against him. Although it wasn't just that, I had the understanding from reading the immigration judge's decision that he had real doubts about whether Satpur Singh was Satpur Singh. He thought he might be Sharma, the fellow that supposedly came into the U.S. according to the documents that the man who now calls himself Satpur Singh presented. And it's a very important distinction for a couple of reasons. First, if he's lying about who he is, there's no reason to believe him about anything. And second, Singh means male Sikh, and Sharma doesn't. And the IJ had doubts about whether he was Satpur Singh and whether he was a Sikh, since he cut his hair and not worn a turban. And the part about corroboration was just giving him a chance to prove he really was Singh and not Sharma and really was a Sikh. It doesn't start with the corroboration. It kind of ends with the failure to show that what appeared to be the case, that he was Sharma, he presented Sharma's documents, didn't act like a Sikh, that that wasn't true. So why believe that he's Satpur Singh? Why would an immigration judge be compelled to think that he was Satpur Singh, a Sikh, at all? Your Honor, respectfully, the petitioner did indeed testify in court and provided an explanation for the use of the passport under the name of Sharma. Oh, he provided an explanation, but the question is whether it has to be believed. The fact that somebody explains away something doesn't mean you have to buy it. If the explanation is credible and reasonable, Your Honor, and additionally, it is not uncommon. It means I believe it. It doesn't mean plausible or conceivable or logically possible. Isn't that petitioner's burden to show by clear and convincing evidence? It is, Your Honors. However, in asylum cases, it is not uncommon for an individual to utilize another's passport in order to gain entry to the United States, particularly when fleeing for one's life from a government that seeks to persecute that individual. In light of the fact that many asylum cases do indeed involve the utilization of another's passport in order to come to the country. Could be. Additionally, Your Honors, he -. It doesn't have to be. That is correct, Your Honors. It does not have to be. However, Petitioner maintains that he did indeed establish a plausible, reasonable explanation for his utilization of the Sharma passport. Also, Petitioner did testify about his attempts to obtain identity documents and did explain to the immigration judge why he was unable to obtain those documents. The immigration judge took that explanation and that testimony and drew some improper inferences specifically with regards to the driver's license or lack thereof. The immigration judge took issue with the fact that the petitioner had not encountered problems as a result of him not having an Indian driver's license. In doing so, the immigration judge improperly imposed American cultural norms upon what was going on in India. She assumed that just because an American- Is there some evidence that you can get stopped by the police for a traffic violation in India and you don't have to show your driver's license? There is no evidence in the record of that, Your Honor. However, the problem is that the way that conclusion is derived is through the immigration judge's own inferences in her oral decision stating that there is no explanation as to why he didn't encounter problems as a result of him not having a driver's license. We are not required to assume that- The thing about the plausible explanation, you seem to be assuming that as long as the asylum seeker has words that if believed would make everything okay, then he's entitled to asylum. Gee, I remember defending criminal cases where the defendants would get on a stand and they had an explanation for everything, but the jury just didn't buy it. And why isn't this the same? Well, Your Honor, in this case, oftentimes asylum seekers have only their words, which is why the credibility determination is so important. Counsel, in this case, the IJ adopted by the BIA made an alternative holding as well concerning changed country conditions, and that only Sikhs who are extremely active  in the asylum system are entitled to asylum. So even if we agree with you completely about credibility, why isn't that a sufficient ground on which to uphold the denial on the asylum claim? Your Honor, because even if we do agree with me on credibility, then we have to go back to the analysis that establishing a past persecution entitles the individual to a presumption of well-founded guilt. That's why I asked you about the alternative holding, because the alternative holding says essentially, well, okay, so let's assume that he's credible. It doesn't help him. Why isn't that sufficient? Because that holding does not take into account the hundreds of pages of documents in the record showing the current, and at that time, current persecution of Sikhs still going on in India, and additionally does not take into account in her analysis the fact that Petitioner does submit evidence that individuals who are perceived to be militants do indeed encounter problems with the police upon their return to India. Petitioner contends that the immigration judge did not engage in a complete analysis taking into account all the evidence of record when she made her determination that even if Petitioner were credible, she would be. Don't we have to assume that the immigration judge and the BIA examined the whole record? Your Honor, we do have to make that assumption. However, we can find flaws in the reasoning when there is evidence in the record that is not given appropriate weight or is perhaps overlooked by the individual rendering the decision. Well, that suggests that we have some kind of supervisory or de novo review. It's a pretty strict standard. If there's substantial evidence to support the decision, even if we would have made a different decision, we have to uphold it. Isn't that her standard? That is correct, Your Honor. However, Petitioner contends that there is not substantial evidence given the ample documentation in the record of problems endured by the Sikhs upon return to India, even in current day. Additionally, Your Honor, Petitioner contends that he was denied an opportunity to apply for cancellation of removal as a result of ineffective assistance of counsel. The Board in its decision on the motion to reopen indicated that there was an inadequate basis for tolling and that Petitioner had not filed a timely motion. Petitioner contends, however, that the evidence in the record indicates that Petitioner's application was indeed timely. New counsel entered their appearance at the Ninth Circuit in September of 2006, and the motion was filed in November of 2006. The affidavit and additional evidence, including the time from when new counsel enters. Your Honor, Petitioner contends that while he was still represented by you can't hide out and have the time tolled because you're hiding out or because you haven't complied with an order or just because your appeal time has come and gone. And then when you happen to hire a new lawyer, have the time start running. That's not what starts the clock. I don't understand the argument. Petitioner contends that until he had the opportunity to seek new counsel, he was still laboring under the ineffective assistance of prior counsel. There's no absolute right to counsel, period. It's not like a criminal case. If he wants to hire a lawyer, he may. And it's his responsibility, not the government's. Right? That is correct, Your Honor. However, if he's missed the boat, right? Well, Your Honor, if Petitioner in this case, as it was the case, it was under the unfortunate situation of having hired a lawyer that was ineffective. Has Congress set some kind of rule like that for us, or has the Supreme Court? Your Honor, Petitioner contends that the fact that he was provided ineffective assistance does indeed allow him to toll the time limit for the motion to reopen until we have to do is decide his contention. We don't have to comply with any statutory requirement, and we don't have to comply with any case law requirement by the Supreme Court. However, Your Honor, the CFR does indeed indicate the 90-day time limit, and Petitioner contends that the fact that he was still being represented by ineffective former counsel. But back to the same thing. If he says something, we have to assume it's true. He says that Mr. Job, who's known as one of the finest immigration attorneys in the circuit, if not the nation, did a lousy job for him. Job says, he didn't pay me to do what he now says he wanted me to do. And you say, well, you have to take Satpur Singh or whoever he is's word for it. I don't understand that. In terms of the representation timeframe, we don't, Your Honors. We have the entry of the new counsel, and we also have the retainer agreement, which is part of the record, which was signed in April of 2006, which indicates that representation did continue until that time period. Petitioner urges that you grant the petition for review. Thank you very much. Thank you, counsel. We'll hear from the government. Good morning, Your Honors. May it please the Court, counsel. My name is Edidia Cohen, and I represent the Respondent Attorney General of the United States. Counsel, I had a question that we didn't discuss with opposing counsel, and that is the claim for humanitarian relief. The BIA didn't resolve that claim, or am I misreading their opinion? You are not misreading their opinion. They did not address that claim. Okay. And why doesn't it have to go back to them to address it, since we can't do it for them, as we have been reminded a few times by the Supreme Court? Your Honors, the government's position is that the Board properly declined to consider the issue of humanitarian asylum. As recognized in Petitioner's brief on page 37, that issue was not raised before the immigration judge. Well, there are a number of problems with your position in that regard, but the biggest one from my perspective is that you're giving us a reason that the BIA didn't. If the BIA had written down a paragraph that says what you just said and what you said in your brief, which is, well, we've decided there should be this requirement, even though the statute doesn't contain one, for why this had to be raised, then we'd be off to the races. But we have no idea whether they lost it, whether they agreed with you. I don't understand how we can bless it without knowing what they did. I understand your concern, Your Honor. But in terms of this Court's jurisdiction, exhaustion of administrative remedies is required. Petitioner didn't raise the issue before the immigration judge. And on appeal to the Board before the BIA, he raised it in a cursory paragraph at the end of his long brief in which he did. Well, the answer is yes, right? He raised it at the BIA. He did. He did raise it on appeal to the Board. Okay. And they didn't say you didn't raise it to the IJ. They didn't say anything. Is your only argument for why we're not stuck remanding to the BIA on the CAT claim that he didn't exhaust before the IJ? I'm sorry, Your Honor, the humanitarian asylum claim? That's what I meant, yeah. That's correct. The administrative remedies were not exhausted and that he made conclusory arguments to the Board in his appeal brief. Those are the arguments that the Respondent has stated in our brief. Your Honor's saying there's insufficient evidence to support the grant? I'm sorry. Can you repeat the question? He didn't hear you, Judge Beeser. I'm sorry. There was insufficient merit to the request, per se. Failed to present it to the Board. The Board is not permitted to find facts. And even if it was, his arguments were conclusory. Okay. So, Your Honors, in this case, substantial evidence supports the immigration judge's decision as affirmed by the Board. The immigration judge pointed to various credibility issues in denying the application. She noted, for example, that there were issues of identity, as brought up in arguments so far. She also noted that there was issue with respect to Petitioner's religious identity. Additionally, there were questions relating to Balwinder Singh's affiliation with Sikh separatists. There was also an issue with respect to Petitioner's familiarity with Paramjit. These were all factors which were cited by the immigration judge in finding Petitioner not to be credible. Under those circumstances, substantial evidence supports the immigration judge's adverse credibility finding. She pointed to specific cogent reasons that went to the heart of Petitioner's asylum claim. And even if the ---- Do we have to agree with you for the government to prevail on the asylum claim? In other words, do we have to agree with you that the credibility, adverse credibility finding is supported by substantial evidence in order to deny that part of the claim? You do not, because the immigration judge made an alternate merits finding based on changing conditions, as Your Honor brought up already in argument. And that finding was based on the fact that Petitioner's claim for asylum was based on his apparent imputed familiarity, friendship, or association with Balwinder Singh and other Sikh separatists. And as he stated in his own testimony, Singh and Balwinder Singh, excuse me, and Lali were killed in a shootout in 1989. In other words, his whole claim was based on the fact that police thought that he was associated with Balwinder Singh, the Lali group, AI, SSF, SSF, and he already stated that Balwinder Singh and Lali were killed in a shootout. Therefore, the immigration judge's finding of changed country conditions so that a finding of past persecution, assuming one were to be made, would no longer be applicable as it would be rebutted by this other evidence. And so this Court need not agree with the immigration judge's adverse credibility finding. I would also note, however, Your Honors, that even if this Court finds that some of the bases for the immigration judge's adverse credibility finding were unsupported in the record or irrelevant, so long as one of the bases for the adverse credibility finding were supported by substantial evidence and go to the heart of the applicant's asylum claim, this Court has stated in other pre-Real Idea cases that such is sufficient to find that substantial evidence supports an I.J.'s adverse credibility finding. Therefore, the government requested this Court to find that substantial evidence supports the I.J.'s denial on both the merits based on credibility and the adverse credibility finding. The record also demonstrates that the Board did not abuse its discretion in denying Petitioner's motion to reopen, which was untimely, based on ineffective assistance of counsel. As Your Honors know, this Court does review motion to reopen under the abuse of discretion standard, and under that standard, this Court will uphold the decision so long as the Board did not act arbitrarily, irrationally, or contrary to law. In this case, Mr. Singh's motion was due 90 days after the final decision in this case, which was due date of June 19, 2006. However, he didn't file that motion until November 13, 2006, and although this Court has shown that ineffective assistance of counsel may serve to equitably toll a time limitation, Petitioner must act with due diligence in order for equitable tolling to apply. And as explained by the Board in their decision, this Petitioner failed to demonstrate the requisite due diligence by failing to argue or show when he learned of the claimed ineffective assistance of Attorney Jobe, who has been lauded by this Court. He also failed to specify when he retained current counsel. And in his ---- Sotomayor, does it matter at all to our decision whether Mr. Jobe is a great lawyer or a mediocre lawyer? As the Board explained, it is not dispository in this case. Well, I guess the reason I ask the question is that even the best lawyers can make mistakes. That's correct. Absolutely. Or lose a file or whatever. Absolutely. I was curious about why you were relying on his definitely excellent reputation, but why that matters. Your Honor, just to be clear, the government's position is that that is not the issue in this case. The Board did note it, and I have noted it as well, but the crux of the government's position is the Board did not abuse its discretion because Petitioner failed to demonstrate why equitable tolling would be warranted in this case. He failed to present any argument or evidence to indicate when he learned of the ineffective assistance of counsel, when he retained current counsel. And he states in his brief that there was evidence that the Barr complaint indicated that Mr. Jobe was representing him until August of 2006 and that some Ninth Circuit entry of appearance was on September 6, 2006 for his new attorney and that the Board should have discovered this fact. And these arguments are without merit because the Board was under no obligation to make assumption from facts that were buried in the record. If Mr. Singh wanted to make an argument or present evidence of due diligence in uncovering the alleged ineffective assistance of counsel, he should have done so in his motion. He failed to do so, and for that reason, the government requested this Court agree that the Board did not abuse its discretion denying the motion to reopen and deny that second petition for review in addition to the first one. And if Your Honor has any questions, otherwise I would submit. Was there ever any evidence that he brought in the money to Mr. Jobe that was a condition of Mr. Jobe representing him further? That he brought in any money? No, I didn't say any money. I said the money. The money. The evidence indicates the difference. If a lawyer says, I'll take $5,000 to represent you further unless you bring me $5,000 by such-and-such a date, I won't, and the prospective client brings in $50, some lawyers might say, well, I'll take a chance on spending $4,500 worth of my time and not getting paid for it. And others will say, no, you didn't do the condition. There isn't evidence in the record regarding payment. There is evidence that there were payment plans which were set up, and Mr. Jobe's contention is that he gave Petitioner the option to represent him completely in immigration proceedings, including the cancellation of removal application for a total of $7,000, but the Petitioner did not want that because he was unable to afford that. And they therefore moved to the second option, which was a $5,000 contract for the I-130 and for the asylum application and defense in immigration court. And there were other contracts which are in the record, and that was a position that Mr. Jobe presented in his letter to the board, which was sent after the motion to reopen was filed by Petitioner. I think we have the original retainer agreement, don't we? There are several agreements which are in the record. Did Mr. Jobe do what the original retainer agreement obligated him to do? The evidence indicates that Mr. Jobe did represent Petitioner on the asylum application, and that was what the contract was for. And that's all the deal was for? Then they agreed to several other contracts for a pro se notice of appeal to the board, and then there was a petition for review. There were several contracts. But with respect to that first contract for $5,000, the record does seem to indicate that he completed his obligations. That's based on the record. In summary, Your Honors, the government's position is that the immigration judge properly denied the asylum application, the withholding application, the application for protection under the Convention Against Torture. The board affirmed and adopted that decision. This Court should deny the petition for review of that decision. The board properly denied the motion to reopen for Petitioner's failure to demonstrate due diligence, and this Court should deny the petition for review of that decision as the board properly denied it. Thank you very much. Thank you, Counsel. You did not reserve rebuttal, but we allow the government to go over, so if you'd like 30 seconds for rebuttal, you may have it. Briefly, Your Honors, I would like to address the issue of the humanitarian asylum. That issue was indeed exhausted at the board level and raised properly. Respondents' counsel indicates that simply by making what the government deems to be a conclusory argument, one fails to exhaust their administrative revenues. However, the law is clear that in raising that argument, regardless of whatever the government may deem, whether it's conclusory or not, that Petitioner did indeed exhaust their administrative remedies at the board level. So Petitioner charges or urges that you grant the petition for review. Thank you. Thank you, Counsel. I have one more question. As I understand it, the theory of the cat claim here is that as the IJ conceded, everybody gets mistreated by the police in India. They beat up everybody and intentionally inflict pain to get them to talk or for whatever reason, regardless of whether it's for race or religion or the other of the five categories. Does that mean that under the Convention Against Torture, no one can be deported to a country where the police do that sort of thing to everybody? Your Honor, what that does mean is that under the Convention Against Torture, if there is a greater than 50 percent chance that an individual will be tortured, they cannot be removed to that country. My question really goes to whether that counts as torture. What I'm thinking is I would guess that in a majority of the countries of the world, the police mistreat prisoners. And it's been known to happen in the United States in some locations. And I think a lot less now than used to be the case, but you read Miranda, the whole decision, not just the excerpts in the law school casebook. That's what that was all about. Does that count as torture? Petitioner contends that police mistreatment and abuse does indeed count as torture. So nobody can be deported, basically, unless they come, well, even in England there are accusations that the police do that. However, Your Honor, Petitioner contends that his prior interactions with the police would draw attention to him and make him more likely than not to be tortured by the police in these cases. That gets back to whether he really is that per se. It does, Your Honor. Thank you, counsel. Thank you. The case just argued is submitted. We appreciate the arguments of both parties.
judges: Beezer, Kleinfeld, Graber